### ARTHUR v. MOLLER.

Certain chromo-lithographs, printed from oil-stones upon paper, and known as decalcomanie pictures, were imported. *Held*, that they were, as printed papers, subject, under sect. 2504 of the Revised Statutes, to a duty of twenty-five per cent *ad valorem*.

ERROR to the Circuit Court of the United States for the Southern District of New York.

The question involved in this case is, whether certain articles imported by the defendants, Charles Moller and Paul E. Vacquerel, into the port of New York, known as decalcomanie pictures, are subject to duties as "printed matter," or as "manufactures of paper, or of which paper is a component material, not otherwise provided for."   12 Stat. 192; 13 id. 213; Rev. Stat., p. 474, sect. 2504, also p. 479.

The statutes impose the duties in the language following; viz., On "books, periodicals, pamphlets, blank-books, bound

or unbound, and all printed matter, engravings, bound or un-bound, illustrated books and papers, and maps and charts, twenty-five per cent *ad valorem.*" Rev. Stat., *supra.*

On "paper, sized or glued, suitable only for printing-paper, twenty-five per cent *ad valorem;* printing, unsized, used for books and newspapers exclusively, twenty per cent *ad valorem;* manufactured of, or of which paper is a component material not otherwise provided for, thirty-five per cent *ad valorem.*" Id., p. 479, sect. 2504.

The goods in question were chromo-lithographs, consisting of landscapes, scenery, and other figures, printed from oil-stones upon paper, with one color printed on top of the other until the picture is finished.

They are used for any purpose to which painting by hand can be applied. There are no letters constituting language upon the face of the paper.

They are made by means of lithographic stones, and printed from the stones successively one after the other, according to the number of colors; the difference between them and a chromo-lithograph being that a chromo is printed positive, while decalcomaine is printed positive and negative, but chiefly negative.

After the picture is printed, it is sometimes covered with a metal leaf, which is also put on by the process of printing; a sizing is printed on from the stone, the metal leaf being placed on top of the sizing by hand, it being too brittle to be placed on by the roller, and it is run through the press, which prints the metal leaf on top of the picture.

Arthur, the collector of the port, imposed and collected a duty of thirty-five per cent *ad valorem* upon the articles, as a manufacture of paper. The importers paid the duty under protest, and brought suit to recover the excess. The court below decided that the pictures were dutiable as printed matter, and not as manufactures of paper, and gave judgment for the plaintiffs. Arthur then brought the case here.

*Mr. Assistant-Attorney-General Smith* for the plaintiff in error.

*Mr. James B. Craig, contra.*

MR. JUSTICE HUNT delivered the opinion of the court.

We think that the decision of the court below was correct.

In *Arthur* v. *Rheims* (96 U. S. 143), it was held that the fact that artificial flowers were a manufacture of cotton did not determine that they were dutiable as components of cotton, but that they were properly taxable under the specific designation of " artificial flowers."

The same was held to be true of india-rubber goods, in *Arthur* v. *Davis* (id. 135), and of the steel forming a part of spectacles, in *Arthur* v. *Susfield* (id. 129).

No one would contend that a picture by an eminent artist painted on canvas would be subject to duties as a manufacture of flax, or that a line engraving of a high order of merit would come under the head of a manufacture of paper, or that a lithograph taken by a single impression does not fall under that branch of the statute which imposes duties on prints or printed matter.

We do not perceive that the fact that the result is produced by several impressions, and of a different color at each time, can make a difference in the conclusion. In country places, we see posted the advertisements of circuses and shows and of political meetings upon sheets of paper of large size, printed in large type of various colors, red, black, and blue, and requiring that the paper should pass more than once through the press. It would be a novel idea that these sheets were not printed matter.

It is not necessary, however, that the characters produced should be letters or numerals, or the result of types or stereotypes, or be reading matter, but the term " print " or " printing " includes the most of the forms of figures or characters or representations, colored or uncolored, that may be impressed on a yielding surface.

Webster defines " to print : " —

2. To take an impression of; to copy or take off the impress of; to stamp.

3. Hence, specifically, to strike off an impression of, or impressions of, from types, stereotype or engraved plates, or the like, by means of a press; or to print books, handbills, newspapers, pictures, and the like.

4. To mark by pressure; to form an impression upon; to cover with figures by a press or something analogous to it; as to print calico, &c.

Print, noun: a mark made by impression; a line, character, figure, or indentation made by the pressure of one body or thing upon another.

3. A printed cloth; a fabric figured by stamping.

Lithograph: a print from a drawing on stone, . . . as a lithographic picture.

Worcester says: "A mark, form, character; a figure made by impression."

McElrath's "Commercial Dictionary," —

"Prints . . . impressions on paper, or engravings on copper, steel, wood, or stone, representing some particular subject or composition, and which may be either colored or uncolored.

"Lithographs, pictures, or designs printed on paper from the lithographic stone, and on which they are traced or engraved. Both when plain and when printed in colors they are commercially regarded as engravings."

Homans's "Encyclopedia of Commerce," —

"Prints: impressions, on paper or some substance, of engravings on copper, steel, wood, stone, &c., representing some particular subject or composition. Prints, like painting, embrace every variety of subject, but differ very widely in the manner in which they are engraved."

McCulloch's "Dictionary of Commerce" uses the same language.

The pictures in question were printed from lithographic stones, by successive impressions, each impression giving a different portion of the view and of a different color. Like other pictures, they are made and used for the purpose of ornament. Equally with engravings, copper-plates, and lithographs, they are printed, and properly fall within the statutory designation of printed matter.

If further argument were needed, it would be found in the principle *noscitur a sociis*. "Printed matter" is named in the list with engravings, maps, charts, illustrated papers. With these, printed pictures are naturally associated.

With components and manufactures of paper are paper sized

or unsized and glued, used for books and newspapers exclusively. These are descriptions of the article paper itself, and have no natural relation to printed drawings or pictures.

*Judgment affirmed.*