**No. 69660.**—Israel Menchaca *v.* United States, protest 321370–K (Laredo).

FORD, Judge: The merchandise involved herein consists of lithographed paper postcards bearing an embroidered design of rayon yarn superimposed thereon. Duty was assessed at the rate of 45 per centum ad valorem under paragraph 1529(a) of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, as articles in chief value of rayon, ornamented.

The case was originally submitted for decision at Laredo, Tex., on a stipulation of facts by counsel. After plaintiff's brief had been filed, the stipulation was set aside at the request of the defendant, and the case was restored to the calendar.

At the hearing of this case at Laredo, Tex., the testimony of two witnesses for the defendant was presented. Upon the record as thus made, plaintiff contended, first, that the shipment was a nonimportation because it was reexported the day following alleged entry, but that, if dutiable, the merchandise should be properly assessable at the rate of 5 cents per pound under paragraph 1406 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, as lithographic paper postcards over 0.020 inch thick. Thereafter, briefs for the respective parties were filed, and this court rendered its decision in favor of the plaintiff, rejecting the issue of nonimportation and also overruling the collector's classification of the merchandise under paragraph 1529(a), holding that the merchandise was properly dutiable under paragraph 1406 at 5 cents per pound, as claimed by plaintiff, *Israel Menchaca* v. *United States*, 48 Cust. Ct. 276, C.D. 2349.

Counsel for defendant thereafter filed a motion for rehearing on the ground that paragraph 1406 should not have been invoked for the classification of an article which was not in chief value of paper, lithographically printed.

At such rehearing, the judgment was vacated and set aside, and the case was set for later hearing on oral argument (Abstract 67208). At this later hearing, the court granted plaintiff's motion to amend its protest to include the following claims:

1. Paragraph 1410 of the Tariff Act of 1930, as postcards, not including American views, decorated, at 15 per centum ad valorem; or, alternatively, under the same paragraph, as greeting cards and other cards, at 15 per centum ad valorem;

2. Paragraph 1413 of said tariff act, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T.D. 52373, as manufactures of paper, at 17½ per centum ad valorem.

3. Paragraph 1410 of said tariff act, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, as greeting cards and all other social and gift cards, with or without greeting, title, or other wording, at either 14 per centum or 21 per centum ad valorem; or.

4. Paragraph 1558 of said tariff act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as articles manufactured in whole or in part, not specially provided for, at 10 per centum ad valorem.

The case was thereupon resubmitted, with leave to both counsel to file additional briefs, in lieu of oral argument.

Since the court has already adjudicated the issue of nonimportation by its aforesaid decision of June 20, 1962 (48 Cust. Ct. 276, C.D. 2349), wherein full summary of the trial record is duly reported, the remaining and only issue before the court is a determination as to the proper tariff classification of the involved merchandise.

In our original decision of June 20, 1962, *supra*, we ruled that the collector's classification of the postcards herein under paragraph 1529(a) of the Tariff Act of 1930 was in error, and that they were properly classifiable under that portion of paragraph 1406 of the said tariff act relating to "all articles other than those hereinbefore specifically provided for in this paragraph."

The pertinent portions of the statutes involved herein follow:

Paragraph 1529(a) of the Tariff Act of 1930:

\* \* \* fabrics and articles embroidered \* \* \* by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of filaments, yarns, threads, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or rayon or other synthetic textile \* \* \*.

Paragraph 1529(a), as modified by T.D. 54108, *supra:*

Articles (including fabrics), ornamented:

| | | | | | | |
|---|---|---|---|---|---|---|
| \* | \* | \* | \* | \* | \* | \* |

Not wholly or in chief value of vegetable fiber_____ 45% ad val.

Paragraph 1406 of the Tariff Act of 1930, as modified by T.D. 51802, *supra:*

Pictures, calendars, cards, \* \* \* and other articles, \* \* \* composed wholly or in chief value of paper lithographically printed in whole or in part from stone, gelatin, metal, or other material \* \* \*

| | | | | | | |
|---|---|---|---|---|---|---|
| \* | \* | \* | \* | \* | \* | \* |

All articles provided for in the provisions of paragraph 1406, Tariff Act of 1930, for "all articles other than those hereinbefore specifically provided for in this paragraph":

| | | | | | | |
|---|---|---|---|---|---|---|
| \* | \* | \* | \* | \* | \* | \* |

Exceeding twenty one-thousandths of one inch in thickness_____ 5¢ per lb.

Paragraph 1410 of the Tariff Act of 1930, as modified by T.D. 54108, *supra:*

Greeting cards, \* \* \* and all other social and gift cards \* \* \*:
   With greeting, title, or other wording_____ 21% ad val.
   Without greeting, title, or other wording_____ 14% ad val.

Paragraph 1413 of the Tariff Act of 1930, as modified by T.D. 52373, supplemented by T.D. 52462, *supra:*

Manufactures of paper, or of which paper is the component material of chief value, not specially provided for (except ribbon fly catchers or fly ribbons) _____ 17½% ad val.

Paragraph 1558 of the Tariff Act of 1930, as modified by T.D. 52739, supplemented by T.D. 52827, *supra:*

Articles manufactured, in whole or in part, not specially provided for (except the following: coconut shell char; dog food; marine glue pitch; synthetic rubber and synthetic rubber articles; tall oil or liquid rosin; textile grasses or fibrous vegetable substances; and edible preparations for human consumption other than yeast) _____ 10% ad val.

Defendant, in its brief, advances five points in argument. The first point urges that the lithographed postcards, with a dress design woven thereon in red,

white, and green rayon yarns, threads, or filaments, constituted a completed article, in chief value of the said yarns, threads, or filaments, that thereafter, there was superimposed on the embroidered red skirt contrasting yellow threads, yarns, or filaments, and a red trim was superimposed on the white blouse over the said design; that this latter superimposition of *additional* contrasting yarn over the dress design, presumably done subsequent to making the woven design, constituted weaving over an already completed article, thereby bringing it within the purview of *United States* v. *Field & Co.*, 10 Ct. Cust. Appls. 183, T.D. 38550, and other cases cited therein.

The decision in the *Field* case, *supra*, was considered by us in our original opinion, wherein we made the following statement (page 280):

In the *Field* case, *supra*, the court set forth the doctrine that ornamentation must be superimposed upon a previously completed fabric or article, not merely a material, which fabric or article must be composed of yarns, threads, or filaments.

We, of course, have examined closely the said design, exhibit 1, as urged by defendant's counsel, but do not arrive at the same conclusion. The aforesaid red trim is an integral part of the rest of the design which we are contemplating, as is the contrasting yellow thread design, which is decorative, but added for its main functional purpose—to hold the design on the paper postcard. It serves this useful purpose and is not *per se* an embroidery. (See *United States* v. *Waentig*, 168 Fed. 570.) These two items, therefore, are not so superimposed upon another preexisting completed article of yarn, thread, or filament, but are, in fact, composite of the whole design, the entity now under consideration. Accordingly, the article is not within the purview of paragraph 1529(a).

A review of the various Summaries of Tariff Information provides some illuminating information relative to the subject matter under consideration.

In Summaries of Tariff Information (1948), volume 14, on "Papers and Books," page 121, under "Comment," we find:

The post cards covered by this summary are of the souvenir type. They are printed by letterpress, lithographic, and gravure processes, or produced by photography.

Imported post cards are subject to 12 different rates of duty. They are specifically mentioned only in paragraph 1410 (post cards, except lithographed cards and American views); the other 11 classifications come under the provisions for "all other" lithographically printed articles, n.s.p.f. (par. 1406), and views of American scenery, localities, etc. (par. 1410).

The latter paragraph above refers to pages 118–119 of the same volume, where we find:

### POST CARDS

#### (PARS. 1406 AND 1410 (PART))

Table 1. * * *

Par. 1406:
    Articles composed wholly or in chief value of paper lithographically printed in whole or in part from stone, gelatin, metal, or other material (except views of American scenery), n.s.p.f.:
        Post cards:

\*      \*      \*      \*      \*      \*      \*

        Exceeding 20/1000 of 1 inch in thickness:
            Valued at not more than 35 cents per pound_____ * * * 5¢ per lb.
            Valued at more than 35 cents per pound_ * * * 5¢ per lb.

Par. 1410:
    All post cards (not including American views), plain,
       decorated, embossed, or printed except by lithographic
       process_____ * * * 30% ad val.

In the case at bar, the apparent deterrent to classification under paragraph 1406 are the words:

    * * * articles * * * composed wholly or in chief value of paper lithographically printed in whole or in part * * *.

However, the component of "chief value" is not always the controlling factor, as we find in cases decided heretofore on the subject of imported postcards.

In *A. H. Ringk & Co.* v. *United States*, 164 Fed. 1021, 15 Treas. Dec. 533, T.D. 29037 (1908), imported postcards were the merchandise in controversy. Printed words appeared on the face of the card, while on the reverse side appeared certain pictorial printed representations with an ornamentation of feathers. Feathers were the element of chief value, not the printed postcard, and the articles were classified as manufactures of feathers. The importer claimed classification under paragraph 403, Tariff Act of 1897, for the postcards, as printed matter. The Board of General Appraisers affirmed the collector's assessment of duty, stating that:

    * * * The feathers being of greatest value and the printed matter insignificant and subordinate in character, such printed matter would not govern the classification * * *.

In reversing this decision, the United States Circuit Court disregarded the element of chief value, holding that the postcards were classifiable as printed matter, the court stated (15 Treas. Dec. 534):

    The printing upon the cards is not insignificant and subordinate in character; it is the chief thing, without which, even with the ornamentation, the merchandise would be of *no practical value*. The ornamentation rather than the printed matter appears to be the incidental feature of the article. [Emphasis added.]

It is evident that the court was not overlooking the possibility that such a ruling might be misinterpreted and misused as precedent for importation of valuable merchandise under the guise of printed matter, for it stated (page 534):

    If an attempt should be made hereafter to introduce valuable merchandise under the guise of "printed matter" the reversal of the Board herein ought not to be considered as a precedent.

The *Ringk* case, *supra*, is followed by *United States* v. *Deutsch. Same* v. *Hensel, Bruckmann & Lorbacher. Same* v. *Ringk*, 178 Fed. 272; 19 Treas. Dec. 217, T.D. 30387. The imported merchandise was paper postcards with other materials, such as celluloid, silk, or wood, the latter being the components of chief value. The collector assessed the merchandise as manufactured articles according to the component of chief value under various paragraphs of the Tariff Act of 1897. The court overruled this action, stating:

    * * * Post cards, whether made of paper alone or combined with other materials, seem to be the same nature as the articles covered by paragraph 402, viz, books, pamphlets, photographs, maps, etc. The judge of the Circuit Court, regarding the printed matter as having a useful connection with the article, probably because it called the attention of the purchasers to the fact that it may be sent through the mail as a souvenir, held that the cards should have been classified as printed matter under paragraph 403. * * *

Since the postcards in the instant case are lithographed, they are thus specifically named and excluded from paragraph 1410, which obviates their classifi-

cation under paragraph 1410. This also eliminates those of the plaintiff's alternative claims based on paragraph 1410. We have remaining, therefore, paragraph 1406 under the latter part of which the court found classification before the instant rehearing.

Whether the *Ringk* or *Deutsch* cases, *supra*, might have been more explicit, they are, nevertheless, settled law with regard to postcards, not lithographically printed. Further along the line of postcards, not lithographically printed and in chief value of a material other than paper, is found *Aztec Mexican Co., Inc.* v. *United States*, 48 Treas. Dec. 727, Abstract 50331, wherein greeting cards, not lithographed, in chief value of feathers, were held dutiable as greeting cards, notwithstanding their chief value of feathers, under paragraph 1310 of the Tariff Act of 1922 (now paragraph 1410 of the Tariff Act of 1930).

While these cases involve postcards, not lithographically printed, it is apparent from the Summaries of Tariff Information (1948) that, in the present tariff act, postcards are provided for *eo nomine* in paragraphs 1406 and 1410. It will be observed, however, that paragraph 1410 is not applicable to the merchandise at bar, since it excepts postcards printed by the lithographic process.

In the case of *Rudolph Schick* v. *United States*, 34 CCPA 95, C.A.D. 348, the question of what was intended to be covered by paragraph 1406 was commented on as follows:

It will be observed that we there [*United States* v. *Canadian National Railways*, 29 CCPA 272, C.A.D. 202] stated that paragraph 1406, *supra*, was intended to cover "all lithographically printed articles unless they have been specifically provided for elsewhere," and that—

In order to so specifically provide for such articles we think that the term "lithographically printed" or words of similar import would have to be employed *or that the imported article even though so printed would have to be so clearly defined as to constitute it a different article in a tariff sense from those embraced in paragraph 1406.* [Italics quoted.]

It is evident that counsel for appellant has overlooked the italicized portion of the quoted excerpt from our decision in that case and the meaning intended to be ascribed thereto.

Obviously, an article provided for by name in another paragraph of the tariff act, although lithographically printed, may be, and in the instant case is, "a different article in a *tariff sense* from those embraced in paragraph 1406." [Italics quoted.]

Research into another line of cases on the subject of exceptions to the general rule regarding chief value, provides us with further law and fact applicable to the controversy at bar. In *United States* v. *Altman & Co.*, 8 Ct. Cust. Appls. 148, T.D. 37272, citing therein *Kenyon Co.* v. *United States*, 4 Ct. Cust. Appls. 344, T.D. 33529, we read:

That a tariff provision for articles of, made of, composed of, or manufactured of a given material generally requires that the articles to be dutiable thereunder must be composed either wholly of the material specified or in chief value thereof, is a rule so often announced that it is unnecessary for an extended citation of authorities supporting the same. See Kenyon Co. *v.* United States (4 Ct. Cust. Appls., 344; T.D. 33529).

That under certain circumstances exceptions to this rule have been recognized is illustrated by the cases above mentioned, referred to by the board in its opinion.

That exception has been recognized in this court in the cases, among others, of Hawley & Letzerich *v.* United States (6 Ct. Cust. Appls., 45; T.D. 35322) and Blumenthal & Co. et al. *v.* United States (5 Ct. Cust. Appls., 327; T.D. 34529). In the case last cited, referring to the Hempstead and Woodruff cases, it was said:

We are not disposed here to say that a case may not again arise relating to an article eo nomine referred to in a tariff statute in which it may not

be held that its classification is to be determined by the predominant material rather than the component material of chief value. To warrant that holding, however, we think it must at least appear that such predominant material, though not the component of chief value, nevertheless gives to the article its name, form, and shape, and determines its character and use, and that in addition it should clearly appear that in the common understanding the eo nomine statutory description included the article under consideration without regard to its component material of chief value.

Applying the wording of the foregoing to the instant merchandise, i.e., the paper postcard in chief value of rayon, it indeed does appear that the predominant material is the paper postcard; although it is not the component of chief value of the whole article as an entirety, nevertheless, it gives to the article its name, form, and shape, and determines its character and use as a postcard, and it clearly appears that the *eo nomine* statutory provision for postcards in paragraph 1406, *supra*, refers to articles commonly understood to be postcards, without regard to the component material in chief value.

In *Blumenthal & Co. et al.* v. *United States*, 5 Ct. Cust. Appls. 327, T.D. 34529, the court states:

\* \* \* sometimes the classification of an article may be governed by its predominant rather than by its component material of chief value and such is the effect of the Hempstead and Woodruff cases \* \* \*.

In the said *Blumenthal* case, the court further states, at page 329:

We are not unaware that the case of United States v. Zinn, *supra* [2 Ct. Cust. Appls. 419, T.D. 32171], has been claimed as an authority for the proposition that predominance rather than chief value of a component material may be resorted to for the purpose of determining the classification of an article made, composed, or manufactured of more than one material.

Based upon the foregoing, it is, accordingly, the opinion of this court that the imported postcards herein are classifiable under paragraph 1406 of the Tariff Act of 1930, as modified by T.D. 51802, and are dutiable at 5 cents per pound as "\* \* \* cards \* \* \* lithographically printed \* \* \* exceeding twenty one-thousandths of one inch in thickness \* \* \*," notwithstanding the element of chief value, under the precedents hereinbefore analyzed.

The court's reluctance to deviate from established rules of construction for an exception must be realized, but the facts of a particular exception may compel consideration on their own merits, particularly where they refer to articles which have coverage under a more specific *eo nomine* as against a general provision.

In the *Altman* case, *supra*, the court did not accord this exception to the facts therein, expressing that to do so would be an invasion of the general rule of chief value adopted in the *Kenyon* case, *supra*, and many other cases referred to therein. However, in its deliberation, the court referred to the quoted language from the *Blumenthal* case, *supra*, which so closely fits the merchandise, the postcard in the instant case.

We confirm the position of our prior determination in this case (*Israel Menchaca* v. *United States*, 48 Cust. Ct. 276, 280, *supra*) that paragraph 1529 (a) does not pertain, since the said rayon ornamentation does not give to the completed postcard its name, shape, form, character, or use, as considered in the *Altman* and the *Blumenthal* cases, *supra*.

We adhere also, with modification, to our classification of the instant postcard under paragraph 1406, *supra*. However, in the light of the closely applicable language of the aforesaid *Altman* and *Blumenthal* cases, *supra*, and upon the other cited cases aligned therewith, and in view of the Summaries of Tariff Information, hereinabove referred to, we modify our former reasoning to the

extent that we are now of the opinion that the said paragraph 1406, which contains the *eo nomine* provision for "cards" is applicable. It is to be noted that the rate of duty prescribed for "cards" is encompassed within the purview of the latter portion of said paragraph 1406, as heretofore held in our original opinion.

Based upon the foregoing, it is, accordingly, the opinion of this court that the imported postcards herein are classifiable under paragraph 1406 of the Tariff Act of 1930, as modified by T.D. 51802, *supra*, and are dutiable at 5 cents per pound as "* * * cards * * * lithographically printed * * * exceeding twenty one-thousandths of one inch in thickness," notwithstanding the element of chief value, under the precedents hereinbefore analyzed.

Judgment will be rendered accordingly.